UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GERALD WILLIAMS,<br><br>    Plaintiff,<br><br>  v.<br><br>THOMAS VILSACK, Secretary of the U.S. Department of Agriculture,<br><br>    Defendant. | CASE NO. C19-0444-JCC<br><br>ORDER |

This matter comes before the Court on Plaintiff Gerald Williams' motion for relief from the discovery deadline (Dkt. No. 53). Having considered the parties' briefing and the relevant record, and finding oral argument unnecessary, the Court hereby DENIES the motion for the reasons explained herein.

I.   BACKGROUND

Gerald Williams, a former United States Forest Service firefighter, alleges that the Fire Management Officer ("FMO") at Mt. Hood National Forest, Deb Roy, discriminated against him because he is black. (Dkt. No. 40 at 19–24.) As set forth in detail in the Court's order on Defendant's motion for partial summary judgment, Mr. Williams originally worked at Mt. Baker National Forest, where he alleges he experienced discrimination, before transferring to Mt. Hood. (*See* Dkt. No. 49 at 1–3.) When Mr. Williams transferred to Mt. Hood, Ms. Roy

concluded that Mr. Williams was missing evidence of certain qualifications and prevented him from "participat[ing] on any fire assignments." (Dkt. No. 40 at 19–24.) Mr. Williams alleges that Ms. Roy could have allowed him to satisfy the criteria in alternative ways or provided him with an opportunity to appeal the adverse decision, but did not do so even though she had offered these opportunities to white firefighters in the past. (*Id.*)

On November 5, 2019, Mr. Williams served a document request seeking "proof of" firefighters who were certified through an alternative process between 2013 and the date of the request, including "a list of the employees by name, the dates they received administrative approval, and the specific FMO who gave approval."[1] (Dkt. No. 53 at 5–6.) The Government responded as follows:

> **Response:** Objection. This request is overly broad, unduly burdensome, and is not relevant and proportional to the needs of the case in terms of time-period and scope (Mt. Baker). Furthermore, Defendant is not required to create documents, in particular, create lists. Subject to and without waiving the objections, Defendant is producing documents reflecting audits of personnel associated with Mount Hood National Forest, USAO19264-19395. For the reasons set forth in response to Plaintiff's Interrogatory Number 17 from Plaintiff's First set of Discovery Requests, Defendant is unable to provide this documentation as to Mount Baker National Forest.

(*Id.* at 6.) Mr. Williams interpreted this response to mean that "the sought-after comparator evidence did not exist." (*Id.* at 5). As far as the record discloses, Mr. Williams did not follow up

---

[1] The full text of the request is as follows:

> **Document/ESI Request No. 9:** Produce proof of any and all employees who received certifications and/or re-certifications that were the result of an approval process as described in Chapter 2.22-2(d) of the Forest Service Fire and Aviation Qualifications Guide or similar process employed when employees have missing or lost documentation related to their qualifications. Plaintiff seeks this documentation from Fire Management Officers' (FMOs) at Mount Hood National Forest and Mount Baker-Snoqualmie National Forest from 2013 to present. Include in this documentation a list of the employees by name, the dates they received administrative approval, and the specific FMO who gave approval.

on this request during the eight months remaining in the discovery period.[2]

Over seven months later, on July 29, 2020, Mr. Williams took the deposition of Gerri Waters, Mt. Hood's training officer. (*See* Dkt. No. 55-1 at 3, 5.) Counsel for Mr. Williams asked Ms. Waters about alternative certifications at Mt. Hood:

> Q: Okay. And how many justification letters have you seen Ms. Roy do in your time at the Mt. Hood and Gifford Pinchot?
>
> A: Oh, probably just a handful. It doesn't come up very often. I would say no more than a dozen.
>
> Q: Okay. So from the time you have been there you know of at least a dozen times where she's done a justification letter for somebody?
>
> A: No. I'm not saying – I'm not saying at least a dozen. I'm saying no more than a dozen. A few, no more than a dozen.
>
> Q: Okay. You don't know of more than a dozen justification letters that she's done?
>
> A: In my time working with Deb as training officer there have been only a few, certainly no more than a dozen.
>
> Q: Got it. And do you remember those individuals who received a justification letter?
>
> A: I only know of one person for sure that did provide waiver information that Deb certified with a Gifford Pinchot employee.
>
> Q: Okay. Who was that individual?
>
> A: Let me think of his name. His name escapes me.

(*Id.* at 5–6.) About a month later, on the last day of discovery, counsel for Mr. Williams deposed Ms. Waters again, and she was able to recall that name. (*See* Dkt. 55-2 at 3, 5–6.)

Later that day, counsel for Mr. Williams e-mailed counsel for the Government and

---

[2] Neither party provided the Court with the date on which the Government responded to Mr. Williams's discovery request, so the Court assumes that it was on or about December 5, 2019, the standard deadline for a response. *See* Fed. R. Civ. P. 34(b)(2)(A). The discovery period was later extended until August 31, 2020. (*See* Dkt. No. 30.)

ORDER
C19-0444-JCC
PAGE - 3

alleged that Ms. Waters' deposition revealed that the Government "clearly withheld" information that it should have produced in response to Mr. Williams' request for production, warned that Mr. Williams "must bring [the issue] to the Court's attention if [the parties] cannot resolve it swiftly," and threatened to move "for sanctions in a separate motion." (Dkt. No. 53-1 at 2.) Mr. Williams also served a new request for production on the Government seeking this information. (*See* Dkt. Nos. 36 at 4, 36-1 at 7.) The Government objected to the new request five days later. (Dkt. No. 36-1 at 7.) Neither party followed up on the matter until several weeks later when Mr. Williams' counsel sent an e-mail in which she noted that she would "need to file the appropriate motions" if the parties could not resolve the issue. (Dkt. No. 53-1 at 6.) After the parties met and conferred, the Government informed Mr. Williams on October 6, 2020 that it would stand by its objections and would not produce additional documents. (*Id.* at 8.) Mr. Williams' counsel responded by stating that she would "file the appropriate motion." (*Id.*) In another e-mail later that day, she clarified that she would "be filing a motion for sanctions . . . after filing [a] response to the [Government's] MSJ." (Dkt. No. 38-1 at 2.) The next day, Mr. Williams filed a different motion, which included a footnote stating that he "intended to address [Defendant's discovery responses] via a separate motion." (Dkt. No. 36 at 4 n.2).

But Mr. Williams did not file the motion during the next six months. On April 21, 2021, after the courthouse began to reopen after COVID-19 vaccines became available, the parties filed a joint status report requesting that the Court schedule trial for mid-to-late 2021. (*See* Dkt. No. 50.) The next day the Court mistakenly issued a scheduling order that reset *all* of the case management deadlines, including a new discovery deadline and dispositive motions deadline, even though those deadlines had already passed. (Dkt. No. 51.) That order prompted e-mails from the parties to the Courtroom Deputy, including one in which Mr. Williams's counsel requested to "set a date" to litigate "an open discovery issue." The Court amended the scheduling order a few days later, noted that the deadline for filing discovery motions passed on August 31, 2020, and instructed Mr. Williams to file a motion if he wished to seek relief from that deadline.

(*See* Dkt. No. 52.) Mr. Williams filed the instant motion later that day. (*See* Dkt. No. 53.)

## II.　LEGAL STANDARD

The Court may modify a scheduling order if a party demonstrates "good cause." Fed. R. Civ. P. 16(b)(4). When analyzing whether there is good cause to reopen discovery, the Court considers the following factors:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017) (quoting *United States ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1526 (9th Cir. 1995)). The good cause standard focuses primarily on "the diligence of the party seeking" to modify the case schedule. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Id.* "If that party was not diligent, the inquiry should end." *Id.* Because the deadline has already passed, Mr. Williams must also show "excusable neglect." Fed. R. Civ. P. 6(b)(1)(B).

## III.　DISCUSSION

Mr. Williams argues that the Court should allow him to file a discovery motion eight months after the deadline and 16 months after the Government responded to the discovery request because the Government "denied that these letters existed," (Dkt. No. 53 at 4), and "Plaintiff only learned of the existence of the information on the day that discovery was scheduled to close," (Dkt. No. 56 at 3), so "it was not possible for Plaintiff to file this motion before the close of discovery." (Dkt. No. 53 at 2.) Mr. Williams also argues that the eight-month delay between the discovery deadline and his motion is justified because the parties met and

conferred until early October 2020, attempted to mediate, and his attorney was "on medical leave" from early 2021 until April 3, 2021. (*Id.*)

The Court concludes that many of Mr. Williams' representations are inconsistent with the record and that Mr. Williams was not diligent in seeking this discovery. Therefore, he has not demonstrated good cause to file an untimely motion to compel. *See* W.D. Wash. Local Civ. R. 16(b)(6) ("Mere failure to complete discovery within the time allowed does not constitute good cause for an extension or continuance.").

Mr. Williams starts from the premise that in November 2019 the Government "denied that these letters existed," but the Government's objection does not state that the letters do not exist, and Mr. Williams has not shown that the Government represented that the letters did not exist elsewhere. Mr. Williams' misunderstanding of the Government's objection does not constitute good cause to extend the discovery deadline. To the extent Mr. Williams was confused about the Government's response, the appropriate course was to meet and confer, not to assume the documents did not exist and decline to follow up for the next six months.

Mr. Williams next argues that he could not have followed up during the discovery period because he first learned of the existence of these documents on the last day of discovery. That is not accurate. Ms. Waters testified about the possible existence of the documents at her July 29, 2020 deposition, just over a month before the discovery deadline. The only additional information relevant to this issue Ms. Waters provided in the August 31, 2020 deposition was the name of one person Ms. Roy certified through an alternative process. Mr. Williams does not offer any explanation for why he did not seek the documents in the month between Ms. Waters' first deposition and her second deposition.

Mr. Williams' explanation for his delay after the discovery deadline passed is also unpersuasive. His filings with the Court and e-mails to the Government from that period make clear that he was aware that he needed to seek Court intervention on this issue "swiftly." (Dkt. No. 53-1 at 2.) He repeatedly threatened to move for sanctions and laid out plans to do so, but

ORDER
C19-0444-JCC
PAGE - 6

never followed through. Mr. Williams' decision to meet and confer with the Government is reasonable—indeed, it is required by the Court's local rules—but after the Government made clear on October 6, 2020 that it would not supplement its production, Mr. Williams was obligated to move to compel promptly if he still sought the documents. He did not so.

Mr. Williams argues that his delay is justified by his attorney's medical circumstances and by the fact that the parties were mediating. (*See* Dkt. No. 53 at 5.) While his attorney's medical circumstances may excuse at least part of the delay in early 2021, the fact that the parties were attempting to settle the case does not constitute good cause. Settlement negotiations occur in nearly every case, and they do not toll the Court's deadlines. If Mr. Williams knew he wished to move to compel but did not want to waste the Court's time in the event the parties settled, the appropriate course was to seek an extension of time from the Court to file the motion.

Because the Court concludes that Mr. Williams was not diligent, the Court's inquiry ends. *Johnson*, 975 F.2d at 609. It is unfortunate that Mr. Williams' counsel's lack of diligence may weaken his claims at trial, but parties are "accountable for the acts and omissions of their attorneys," *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396 (1993), and the Ninth Circuit has warned that litigants often "pay a price for failure to comply strictly with scheduling and other orders, and that failure to do so may properly support severe sanctions and exclusions of evidence," *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005). Several litigants have sought second chances at discovery while the courthouse has been closed due to the COVID-19 pandemic, and the Court has consistently held that the pandemic is not a license to disregard the Court's scheduling orders. *See* Dkt. No. 28 (May 2020 letter warning that "the Court believes it is important to maintain existing case schedules to the greatest extent possible"); *see also Shaffstall v. Old Dominion Freight Line, Inc.*, 2021 WL 1401572 (W.D. Wash. 2021) (denying motion to reopen discovery 16 months after discovery deadline); *Lewis v. Phan*, Case No. C19-0314-JCC, Dkt. No. 50 (W.D. Wash. 2021) (denying motion to reopen discovery 11 months after discovery deadline). The Court reaches the same

conclusion here.

IV. **CONCLUSION**

For the foregoing reasons, the Court DENIES Mr. Williams' motion for relief from the discovery deadline (Dkt. No. 53).

DATED this 6th day of July 2021.

John C. Coughenour
UNITED STATES DISTRICT JUDGE