THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GERALD WILLIAMS,

          Plaintiff,

  v.

THOMAS VILSACK,

          Defendant.

CASE NO. C19-0444-JCC

ORDER

In lieu of a pretrial conference, the Court directed the parties to meet, confer, and raise any remaining issues in a joint brief. (Dkt. No. 59.) They did so.[1] (Dkt. No. 63.) In the joint brief, Defendant makes five motions in limine, which the Court now addresses.

## I.    BACKGROUND

Plaintiff, who is Black, worked as a firefighter with the U.S. Forest Service. He was originally stationed at Mount Baker-Snoqualmie National Forest ("Mt. Baker"). He brought a lawsuit alleging that he experienced racial discrimination while stationed at Mt. Baker, but the Ninth Circuit ruled that those claims were time-barred. *Williams v. Perdue*, 731 F. App'x 726

---

[1] The Court directed the parties to file a 16-page brief, with each side allotted half of the page-count. (Dkt. No. 59 at 2.) The parties' brief is 19 pages, and they even apparently used smaller-than-usual line spacing to circumvent the page restriction. (*See* Dkt. No. 63 at 14–16.) The Court appreciates that splitting a page count in half is an inexact science, but the parties apparently made little effort to do so. The Court will strike future filings that do not adhere to its orders or to formatting requirements in the local rules.

(9th Cir. 2018). In 2017, Plaintiff transferred to Mount Hood National Forest ("Mt. Hood"). His superior at Mt. Hood concluded that he lacked certain qualifications needed for him to participate in fire assignments, even though she allegedly let white firefighters who lacked the same qualifications fulfill them in other ways so they could keep working.

Plaintiff filed this action asserting claims based on his time at both Mt. Baker and Mt. Hood. The Court granted summary judgment on all the Mt. Baker-related claims, and one of the Mt. Hood-related claims; thus, "[t]he only claims that remain" are Plaintiff's Mt. Hood-related retaliation and disparate treatment claims. (Dkt. No. 49 at 6.)

## II. DISCUSSION

A. **Motion in Limine No. 1**: Exclude evidence of discrimination/retaliation that happened at Mt. Baker and disallow damages based on the same. (Dkt. No. 63 at 3.)

1. Parties' Positions

Defendant argues there is no connection between the decisionmakers who allegedly discriminated against Plaintiff at Mt. Hood and those who did so at Mt. Baker, and that the Mt. Baker-related claims are time-barred under the Court's summary judgment order. (Dkt. No. 49.) Plaintiff argues he should be able to show that he left Mt. Baker for the same reasons he left Mt. Hood. He argues that, even if Mt. Hood involved different supervisors than at Mt. Baker, both National Forest areas are in the same administrative region, which has a unitary culture as to how it treats minorities. He also argues that contact between him and Mt. Hood officials before he transferred there helps show they were hostile toward the diversity initiatives Plaintiff championed. (Dkt. No. 63 at 5–10.)

2. Court's Ruling

Defendant's motion is GRANTED. "Even if everything Plaintiff alleges about Mt. Baker is true, none of that evidence is probative of whether Ms. Roy and Ms. Waters (or anybody associated with Mt. Hood) discriminated or retaliated against Plaintiff in connection with the audit of his training records or its aftermath." (Dkt. No. 63 at 4.) Plaintiff's reliance on *Lyons v.*

*England*, 307 F.3d 1092 (9th Cir. 2002) is unpersuasive. That court let plaintiffs introduce time-barred acts of discrimination in the form of statistical evidence that their employer unequally distributed professional opportunities among employees of different races. *Id.* at 1110–12. But both the time-barred and timely discriminatory conduct was the same and happened at the same Naval base. *See id.*; *accord Pintro v. Rosenworcel*, — F. Supp. 3d —, 2021 WL 3616838, slip op. at 5–6 (D.D.C. 2021) (evidence of discriminatory incidents for which plaintiff failed to exhaust administrative remedies was admissible under Federal Rules of Evidence 401 and 404(b) to prove discriminatory intent where (1) incidents involved same decisionmaker; (2) alleged discriminatory conduct was substantially similar; (3) incidents were temporally close; and (4) in each instance where plaintiff was not selected, he identified white employees who were).

Here, alleged discrimination at Mt. Baker is time-barred, involved different decisionmakers and different allegedly discriminatory conduct, and is therefore inadmissible under Rules of Evidence 401 and 404(b). Plaintiff may not introduce evidence that any treatment he experienced at Mt. Baker constitute a compensable Title VII violation. To the extent he lays proper foundation, though, some things that happened while he was at Mt. Baker may be appropriate to the extent it is probative of the knowledge or intent of decisionmakers Plaintiff dealt with at Mt. Hood. (*See* Dkt. No. 63 at 6:7–7:6 (discussing contact between Plaintiff and Mt. Hood decisionmakers in 2007 or 2008).) But Plaintiff cannot bring in evidence regarding time-barred events of alleged discrimination at Mt. Baker.

B. **Motion in Limine No. 2: Exclude evidence of other alleged acts of discrimination at the Forest Service.**

1. Parties' Positions

Defendant asks the Court to bar Plaintiff from eliciting testimony about "the 'history of racism in the Forest Service' as well as diversity and inclusion issues within the Forest Service." (Dkt. No. 63 at 10 (apparently quoting Plaintiff's pretrial statement).) Defendant argues that Plaintiff will seek to offer as propensity evidence instances of discrimination among the entire

administrative region encompassing Mt. Hood and Mt. Baker, as well as the whole Forest Service. He argues this evidence risks the jury deciding the case based on facts not involving Plaintiff and his superiors at Mt. Hood, and will lead to mini-trials about unrelated incidents of discrimination. Plaintiff counters that he and his witnesses will testify only on personal knowledge "of fire officials' receptiveness and/or resistance to diversity initiatives in which hiring and retention data was the measure of the program's effectiveness." (Dkt. No. 63 at 12.)

   2. <u>Court's Ruling</u>

  The Court's ruling on Motion in Limine No. 1 already prevents Plaintiff from offering Mt. Baker-related instances of alleged discrimination. The problem with both parties' arguments on Motion in Limine No. 2, however, is that it's not entirely clear what exactly Defendant wants excluded. For example, the relevance of Kurt Davis's testimony is unclear. On one hand, Plaintiff indicates that Mr. Davis's testimony is probative of Ms. Roy's discriminatory animus in her dealings with Plaintiff (Dkt. No. 63 at 7); on the other, Defendant indicates that Mr. Davis might testify about alleged discriminatory incidents involving different decisionmakers than those at issue in Plaintiff's claims (*id.* at 11 & n.25).

  Plaintiff must be able to present evidence that his supervisors had discriminatory intent or subjected him to disparate treatment. But he cannot introduce evidence that risks the jury inferring—from discrimination against other employees, involving different decisionmakers, from ill-fated diversity initiatives, or from a racist history untethered to the facts of this case—that it is thus more likely that Plaintiff suffered retaliation or disparate treatment. That sort of evidence would violate Federal Rule of Evidence 404(b) and, potentially, Rule 403.

  Plaintiff is right that statistical evidence can be used to prove disparate treatment (Dkt. No. 63 at 12–13), but it is not clear that is what Plaintiff plans to offer. The Court is concerned about putting anecdotal evidence, or improper character, opinion, or reputation testimony, before the jury. That said, if there is needed context for Mt. Hood officials' decisions concerning Plaintiff that can be proven with admissible evidence, the Jury should hear it.

The Court RESERVES ruling on Motion in Limine No. 2 and will address it as and when it arises. To the extent possible, counsel should call the Court's attention during trial to testimony they believe will implicate Motion in Limine No. 2 before those witnesses take the stand.

C. **Motion in Limine No. 3**: Limit testimony on comparators to those evaluated at Mt. Hood by the decisionmakers who evaluated Plaintiff.

  1. Parties' Positions

Defendant urges the Court to prevent Plaintiff from offering expert testimony comparing Plaintiff's firefighting qualifications to those of seven white employees that were not evaluated by the decisionmakers that allegedly rejected Plaintiff's qualifications. Plaintiff argues that comparators can be similarly situated without having the same supervisor and that the asserted comparators are similarly situated in "tenure, rank, age, experience as a firefighter[,] and position." (Dkt. No. 63 at 15.) Plaintiff also points out that, even if seven (of nine total) comparators were not assessed by the same decisionmakers as Plaintiff, they were all subject to the same regulatory standards for firefighter qualifications.

  2. Court's Ruling

The Court agrees with Plaintiff. If the same qualification standards governed all comparators—regardless of who their supervisors were—it is relevant if a particular supervisor is applying those standards differently than other supervisors are. Accordingly, the Court DENIES without prejudice Defendant's Motion in Limine No. 3.[2] Plaintiff may present this comparator evidence if he lays the proper foundation to establish that the comparators were in fact similarly situated, e.g., their qualifications were judged against the same standards as Plaintiff's, Plaintiff's supervisor was indeed applying those standards when evaluating him, the expert's opinion is admissible, etc. That is not unduly prejudicial; Defendant can still elicit

---

[2] There is an important caveat: Admissible comparator evidence must comply with the Court's ruling on Motion in Limine No.1. (Dkt. No. 63 at 15 (Plaintiff arguing "Williams was a Superintendent *on the Mt. Baker* [duty post]. There were only 9 superintendents in the Region at the time Williams'[s] suit was filed, who were similar to him in all material respects." (emphasis added)).)

testimony suggesting that different outcomes among comparators could result from factors other than race.

**D.     Motion in Limine No. 4: Preclude Plaintiff from presenting evidence of economic loss before the jury.**

   1.     Parties' Positions.

Because the jury's role is to determine liability and compensatory damages, but not back-pay or front-pay, which are equitable remedies, *Lutz v. Glendale Union High Sch.*, 403 F.3d 1061, 1067, 1069 (9th Cir. 2005), defendant argues, the jury should not hear evidence regarding the latter, (Dkt. No. 63 at 16–17.) Plaintiff doesn't squarely meet this argument but says that he would like to testify on his earnings in years where he was dispatched on fire assignments compared to years where supervisors allegedly prevented him from doing so.

   2.     Court's Ruling.

Defendant is right on the law but wrong on how best to implement it. Under *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959), a jury trial must be completed before the Court can consider ethical claims. That would be cumbersome here, where there may be overlapping proof for both legal and equitable remedies and bifurcation could create logistical issues. Federal Rule of Civil Procedure 39(c) gives the Court broad discretion to empanel an advisory jury in a situation like this. The Court DENIES Motion in Limine No. 4; if Plaintiff is seeking back-pay or front-pay, the jury's verdict will be advisory as to that remedy. *Cf. Sweeney v. Chang,* 2019 WL 1431583, slip op. at 6 (C.D. Cal. 2019).

**E.     Motion in Limine No. 5: Do not show jurors the venire video on implicit bias.**

   1.     Parties' Positions

Defendant asks the Court not to show prospective jurors the Court's video on unconscious bias, which features the undersigned judge.[3] He argues the video would unfairly

---

[3] *Unconscious Bias Juror Video*, U.S. Dist. Ct., W.D. Wash. (Mar. 10, 2017), https://www.wawd.uscourts.gov/jury/unconscious-bias

prejudice him by making jurors think he should have to prove that bias did *not* motivate his decisionmakers. (Dkt. No. 63 at 18 (citing *Rosales v. Spencer*, C17-5781-BHS, Dkt. No. 82 (W.D. Wash. 2020) (granting motion to excuse showing this video to potential jurors)).)

      2.    <u>Court's Ruling.</u>

The Court sees little risk in playing the unconscious video to a properly instructed jury. The video tells jurors about how *our own* subconscious biases subtly influence our decisions and perceptions—it says nothing about attributing motives to others. Plaintiff must still persuade jurors that Defendant's decisionmakers treated him differently because of his race. If anything, understanding their own implicit biases (which are by no means limited to issues of race) will aid jurors in deciding whether Plaintiff has done that. The Court DENIES Motion in Limine No. 5.

### III.    CONCLUSION

For the foregoing reasons, the Court ORDERS as follows with respect to the parties' joint brief (Dkt. No. 63):

1. The Court GRANTS Motion in Limine No. 1.
2. The Court RESERVES ruling on Motion in Limine No. 2 and will address testimony implicating this motion outside the jury's presence before witnesses giving it take the stand.
3. The Court DENIES without prejudice Motion in Limine No. 3.
4. The Court DENIES Motion in Limine No. 4 and Motion in Limine No. 5.

DATED this 14th day of October 2021.

John C. Coughenour
UNITED STATES DISTRICT JUDGE