Honorable John C. Coughenour

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GERALD WILLIAMS,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS VILSACK, Secretary of the U.S. Department of Agriculture,<br><br>Defendant. | NO. C19-0444 JCC<br><br>PLAINTIFF'S TRIAL BRIEF |

## INTRODUCTION

Gerald Williams is a 30-year veteran wild land firefighter for the United States Forest Service. His last day of service was May 31, 2021. Mr. Williams transferred from the Mt. Baker Snoqualmie NF where he worked as a Superintendent of the Mt. Baker Snoqualmie Initial Attack Crew. Mr. Williams' primary responsibilities were to recruit diverse candidates from all backgrounds to serve on the crew as entry level fire fighters. In that role, he oversaw all crew operations and matriculated more than 100 students through the program. In 2017, he applied for an instructor's job on the Mt. Hood National Forest with Job Corps. He was hired.

PLAINTIFF'S TRIAL BRIEF
C19-0444 JCC -1

FORD LAW PROS PC
1001 L STREET, SE
WASHINGTON, DC 20003
(202) 792-4946

Before he could take any crews out on fires, he had to have his fire credentials audited—a standard procedure.  The audit was conducted by Gerri Waters who discovered several missing certificates and task books.  Ms. Waters conferred with Fire Staff Officer, Deb Roy. The two never communicated directly with Mr. Williams about his missing credentials.  After 6 months, they determined that Mr. Williams could not be dispatched due to the number of missing certificates.  Ultimately, all of his qualifications lapsed and he was demoted to a Firefighter Type 2 trainee—the lowest level for an entry level firefighter within the Forest Service. He ultimately retired with no credentials. The only other firefighter Deb Roy refused to re-certify is Kurt Davis—he too is Black and Roy's decision ended his career in the fire organization just as it did Gerald Williams.  Mr. Williams has filed suit against the Agency for racial discrimination and retaliation.

## II. BACKGROUND/WHAT THE EVIDENCE WILL SHOW

Mr. Williams' former direct supervisor, Deb Roy, ostensibly demoted Mr. Williams from a Superintendent and Incident Commander to a "trainee."  The reason for this is because Ms. Roy contends that Mr. Williams's master record does not match the certifications contained in his training file.  Due to the fact that Mr. Williams' does not have the certifications to back up the credentials listed on his master record, she claims, he is not eligible to fight fires.

This adverse action drastically reduced his income because he is no longer able to get the overtime or hazard pay that he has received for the past 20 years.  Entry level fire fighters earn a base salary of approximately $29-32,000.00 per year.  Mr. Williams' base salary is approximately $46,000.00 per year.  That said, overtime and hazard pay is the lifeblood of a firefighter's income.  What is more, Mr. Williams is unable to engage in the work to which he has dedicated his entire life.  He was forced to retire on May 31, 2021 without his credentials, which forecloses the post-retirement work prospects that are available to other senior level fire

PLAINTIFF'S TRIAL BRIEF
C19-0444 JCC -2

FORD LAW PROS PC
1001 L STREET, SE
WASHINGTON, DC 20003
(202) 792-4946

fighters and instructors of his tenure. *Moreover, Mr. Williams will prove that the Agency's actions against him are unprecedented in the entire Region*. He will introduce the training files and master records of his comparators—other Superintendents with his tenure within Region 6. All of Mr. Williams' comparators are White and each and every one of their files contains similar discrepancies between the master records and training files and yet none of them have been demoted, decertified or had to re-take 30 years of training at the request of a FMO. Ever.

It is undisputed that Mr. Williams' master record indicates that he has all of the required certifications. In response to that, however, Defendant contends that he needs "proof" that he obtained all of these certifications and that his lack of proof is his own fault. *However, it is indisputable that the certificates are held in a training file that is maintained by the Agency*. Nevertheless, the Agency asked Mr. Williams' to provide the actual certificates that he received from all of his courses, even those that he took 30 years ago, or affidavits from his instructors—all of whom are dead or retired. At no time, did the Agency inform Mr. Williams that he did not have to provide 30 years of documentation to maintain his credentials. Roy and Waters admitted that he had several options including:

- Teaching a class (which he was already doing for Job Corps)
- Go before the Red Card Review Committee (which must be requested by Deb Roy)
- Request a letter from Roy that would provide him with an administrative override

*Neither Roy nor Waters provided him or his supervisor Kurt Davis with any of these options.* In six months, Mr. Williams' 30-year career was destroyed when he was demoted to a trainee and his credentials lapsed entirely. BUT THERE IS MORE. There is one other firefighter whose career Roy destroyed. That man is Kurt Davis, who is believed to be the only other Black male firefighter under Roy's authority. Davis will testify that it took him nearly 10 years to earn his crew boss certification and that he was signed off by his final evaluator but he needed Deb Roy's final approval and she refused to sign off. His career in fire management

PLAINTIFF'S TRIAL BRIEF
C19-0444 JCC -3

FORD LAW PROS PC
1001 L STREET, SE
WASHINGTON, DC 20003
(202) 792-4946

was over. There is no evidence that Roy did this to any firefighters EXCEPT Williams and Davis—both of whom are Black men.

Roy and Waters had additional motives to block Williams' from being dispatched on fires—that is he filed an EEO complaint against both women in 2017. Once they were notified, they took their sweet time auditing his records and unsurprisingly, he did not pass. His supervisor, Kurt Davis, was not notified until March of 2018 despite sending multiple emails and having multiple meetings with Roy and other Agency officials about his program's survival hanging in the balance without Gerald Williams. Davis ultimately left the Mt. Hood.

### III. POTENTIAL LEGAL AND EVIDENTIARY ISSUES AT TRIAL

There remains a motion in limine regarding Mr. Williams' ability to collect front pay. Plaintiff refers to the parties' joint brief filed on the issue upon which the Court has yet to rule. Contrary to Defendant's assertions, Plaintiff does not need to have a constructive discharge claim in order to collect front pay through the date of his actual retirement. It is long held that front pay may be awarded in three circumstances: (1) where return of the employee to his previous position is not possible because there is no position available, (2) where return of the employee is not possible because of the hostility such a return would occasion, or (3) where the employer has historically resisted anti-discrimination statutes. *Pollard v. E.I. DuPont de Nemours & Co.*, 121 S. Ct. 1946 (2001); *see also Fitzgerald v. Sirloin Stockade Inc.*, 624 F.2d 945 (10th Cir. 1980). Defendant falls into category No. 3 and the Plaintiff will put on evidence about the history of discrimination within the USFS.

### IV. LEGAL STANDARDS

The plaintiff has brought a claim of employment discrimination against the defendant. The plaintiff claims that his race was either the sole reason or a motivating factor for the defendant's decision to decertify him. The defendant denies that the plaintiff's race was either the sole reason or a motivating factor for the defendant's decision to decertify the plaintiff and further claims the decision to decertify him was based on a lawful reason. The Ninth Circuit

PLAINTIFF'S TRIAL BRIEF
C19-0444 JCC -4

FORD LAW PROS PC
1001 L STREET, SE
WASHINGTON, DC 20003
(202) 792-4946

pattern Jury Instructions advise this Court to use 10.01 10.2 (Civil Rights—Title VII—Disparate Treatment—"Sole Reason"—Elements and Burden of Proof) and 10.3 (Civil Rights—Title VII—Disparate Treatment—"Motivating Factor"—Elements and Burden of Proof) whenever the Title VII claim is based on disparate treatment as it is here.

In *Costa v. Desert Palace, Inc.,* 299 F.3d 838, 856-57 (9th Cir. 2002) (en banc), aff'd, 539 U.S. 90 (2003), the Ninth Circuit clarified the role of jury instructions on causation in Title VII cases. The court may provide either a "single motive" or "mixed motive" instruction. *Costa* explained that "mixed" and "single" motives are not two "fundamentally different" theories of liability. *Id.* at 857. Instead, they are merely two avenues of instruction by which the plaintiff may meet the ultimate burden of proof: "to show by a preponderance of the evidence that the challenged employment decision was 'because of' discrimination." *Id.*; *see also* 42 U.S.C. § 2000e-3(a) (prohibiting discrimination "because of" protected activity). The choice of instruction will depend on the evidence offered at trial.

Thus, "[a]fter hearing both parties' evidence, the district court must decide what legal conclusions the evidence could reasonably support and instruct the jury accordingly." *Costa*, 299 F.3d at 856.

> If, based on the evidence, the trial court determines that the only reasonable conclusion a jury could reach is that discriminatory animus is the sole cause for the challenged employment action or that discrimination played no role at all in the employer's decision-making, then the jury should be instructed to determine whether the challenged action was taken "because of" the prohibited reason. . . .
>
> In contrast, in cases in which the evidence could support a finding that discrimination is one of two or more reasons for the challenged decision, at least one of which may be legitimate, the jury should be instructed to determine first whether the discriminatory reason was "a motivating factor" in the challenged action. If the jury's answer to this question is in the affirmative, then the employer has violated Title VII. . . .

PLAINTIFF'S TRIAL BRIEF
C19-0444 JCC -5

FORD LAW PROS PC
1001 L STREET, SE
WASHINGTON, DC 20003
(202) 792-4946

*Costa* at 856-57.

A motivating factor is a factor that "played a part in the employment decision." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 241 (1989) (plurality opinion). Here, Williams will show that race was a motivating factor in the Agency's decision in conjunction with a retaliatory motive because Williams' challenged management's delay of his audit by filing an EEO complaint against Roy and Waters, of which they were both aware while conducting his audit.

Contrary to Defendant's assertion, there is a burden-shifting framework permitted in this case under the prevailing instructions. That is, if the plaintiff prevails when the jury is given a mixed motive instruction, the defendant may be afforded an opportunity to prove "by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender into account." *Costa*, 299 F.3d at 848; *cf. Galdamez v. Potter*, 415 F.3d 1015, 1021 (9th Cir. 2005) (holding that "same decision" instruction need only be given if requested by employer and supported by evidence at trial).

If the defendant proves that it would have made the same decision in the absence of a discriminatory motive, the Civil Rights Act of 1991 limits the plaintiff's remedies to declaratory or injunctive relief, as well as attorneys' fees and costs. 42 U.S.C. § 2000e-5(g)(2)(B) (modifying *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)); *see also Washington v. Garrett*, 10 F.3d 1421, 1432 n.15 (9th Cir. 1993) (discussing development of "same decision" defense from Price Waterhouse through 1991 Act).

The judge should consider providing the jury with the special verdict form provided by Plaintiff (and taken from the pattern instructions) to determine the jury's findings on the question of sole or mixed motive.

## V. DAMAGES

PLAINTIFF'S TRIAL BRIEF
C19-0444 JCC -6

FORD LAW PROS PC
1001 L STREET, SE
WASHINGTON, DC 20003
(202) 792-4946

Mr. Williams is relying on Dr. Christina Tapia as his economist on the issue of economic damages. He will defer to her testimony and her report. He is entitled to compensatory damages under Title VII and attorney's fees.

DATED this 31st day of January, 2022.

Respectfully submitted,

*s/ Yaida O. Ford*
Yaida O. Ford, #48723
FORD LAW PROS PC
1001 L Street, SE
Washington, D.C. 20003
Phone: 202-792-4946
Fax: 202-827-7881
E-mail: yford@fordlawpros.com

*Counsel for Plaintiff*

PLAINTIFF'S TRIAL BRIEF
C19-0444 JCC -7

FORD LAW PROS PC
1001 L STREET, SE
WASHINGTON, DC 20003
(202) 792-4946